UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**FRANKIE LEE JOHNSON,**

    **Plaintiff,**

    v.                                                                             Case No. 23-CV-130

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security[1],**

    **Defendant.**

## DECISION AND ORDER

Frankie Lee Johnson seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (Docket # 1.) For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

On September 2, 2020, Johnson filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (Tr. 15.) In both applications, Johnson alleged disability beginning March 23, 2020 due to rheumatoid arthritis, Crohn's disease, vasovagal syncope, myofascial pain syndrome, anemia, bilateral sensorineural hearing loss, migraine headache disorder, obesity,

---

[1] The Court has changed the caption to reflect Martin J. O'Malley's recent appointment as Commissioner of Social Security.

depression, and attention-deficit hyperactivity disorder ("ADHD"). (*Id.* at 17–18.) These claims were denied initially on October 20, 2020, and upon reconsideration on July 14, 2021. (*Id.* at 15.) Johnson had a telephone hearing on November 2, 2021 before Administrative Law Judge ("ALJ") Michael N. Balter. (*Id.*) Johnson appeared at the hearing and was represented by Attorney Timothy P. Geary. (*Id.*) Edward Pagella, an impartial vocational expert ("VE"), also appeared at the hearing. (*Id.*)

ALJ Balter issued an unfavorable written decision on December 17, 2021. (*Id.* at 1.) ALJ Balter found that Johnson has the following severe impairments: rheumatoid arthritis, Crohn's disease, vasovagal syncope, myofascial pain syndrome, anemia, bilateral sensorineural hearing loss, migraine headache disorder, obesity, depression, and ADHD. (*Id.* at 17–18.) ALJ Balter also found that Johnson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (*Id.* at 17.) Furthermore, ALJ Balter found that Johnson had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing of ladders, ropes or scaffolds and only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She is limited to frequent bilateral handling and fingering and occasional exposure to extreme cold and limited to occasional exposure to concentrated dusts, fumes, odors, gases, poor ventilation, and other pulmonary irritants. She is further limited to occasional exposure to hazards such as unprotected heights and dangerous moving machinery. The claimant is able to understand and remember simple instructions and has the concentration, persistence, and pace to perform routine tasks for two-hour periods. She must have access to regularly scheduled breaks. She is unable to perform fast paced production rate pace-work (i.e. assembly line work) but can perform goal-oriented work. Finally, the claimant can adapt to changes in a routine work setting.

2

(*Id.* at 20.) Finally, ALJ Balter found that Johnson was unable to perform any of her past relevant work (*id.* at 25) and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Johnson can perform (*id.* at 26). Accordingly, ALJ Balter determined that Johnson was not disabled from March 23, 2020 through the date of the decision. (*Id.* at 27.) ALJ Balter's decision became the Commissioner's final decision when the Appeals Council denied Johnson's request for review on June 16, 2022. (*Id.*)

## LEGAL STANDARD

The court may only reverse the Commissioner's final decision if it is based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence need not be conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted).

While the ALJ is not required to discuss every piece of evidence in a decision, the ALJ must "build an accurate and logical bridge" between the evidence and their conclusions. *Jelinek*, 662 F.3d at 811; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ must also follow the SSA's rulings and regulations, as failure to do so requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).

In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is strictly limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690,

3

697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Johnson advances three arguments for remand: (1) the ALJ's evaluation of Johnson's migraines is unsupported by a logical bridge from evidence to conclusion; (2) the ALJ's RFC assessment of Johnson's hand dysfunction is unsupported by a logical bridge from evidence to conclusion; and (3) the ALJ's symptom evaluation violated SSR 16-3p. (Pl. Br., Docket # 23.) I will address each argument in turn.

1. *RFC Limitations for Migraine Symptoms*

Johnson first asserts that the ALJ failed to adequately account for limitations related to her migraines in the RFC. (Pl. Br. at 5–16.) The RFC is "the most a person can do in a work setting despite the person's limitations." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (citing 20 C.F.R. § 404.1545(a)(1)). Johnson asserts that the ALJ "erred by failing to create a logical bridge from Ms. Johnson's severe headaches and associated, uncontradicted, light sensitivity to the conclusion that no specific RFC limitations to account for those headaches were warranted." (Pl. Br. at 7.) Johnson asserts that this error was not harmless as the ALJ's reasons for discounting Ms. Johnson's headaches were "illogical and improper." (*Id.* at 8.) Moreover, Johnson asserts that the ALJ's "failure to include, or even address as required by SSR 96-8p, a light sensitivity limitation was further not harmless as the ALJ did not assess the combined impact of Ms. Johnson's impairments—which supported that she would be off-task due to a need to rest and manage light sensitivity during the day." (*Id.* at 13.)

Migraines are one of the more challenging impairments for ALJs to address because "determining the nature and extent of a claimant's impairment rests heavily on an assessment

of the claimant's subjective symptoms, including how her symptoms respond to treatment," rather than objective measures. *Gould v. Kijakazi*, No. 21-CV-308, 2022 U.S. Dist. LEXIS 31435, at *7 (E.D. Wis. Feb. 23, 2022); *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (noting that imagining is generally useful only to rule out certain possible causes of migraines); *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020) ("And there is no objective measure for migraine symptoms, so the ALJ could only determine the limiting effects of Overton's migraines by assessing her credibility.") (internal citations omitted); SSR 19-4p, § 2. However, ALJs still have an obligation to consider all relevant evidence and must "build an accurate and logical bridge" between the evidence and their conclusions." *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Jelinek*, 662 F.3d at 811; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Here, the ALJ's RFC finding did not include any limitations to account for Johnson's light sensitivity or need for additional rest breaks due to symptoms of Johnson's migraines. (Tr. 25.) The ALJ acknowledged that Johnson "suffers from pain and limitations," but determined that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 23.) The ALJ found that Johnson had not demonstrated that "the pain is so debilitating that it would be completely work preclusive" because the record showed that Johnson experienced "only intermittent headaches activity" due to "significant improvement with use of Topomax and without resulting side effects." (*Id.* 23–24.)

I find that the ALJ's decision not to include limitations for light sensitivity or need for additional rest breaks was supported by substantial evidence. The ALJ discussed Johnson's emergency room migraine treatment in August 2020, April 2021, and August 2021 and how

5

Johnson at times reported experiencing migraine symptoms such as nausea, vomiting, sensitivity to light and sound, and right eye aura. (*Id.* at 22.) However, the ALJ found that the "intermittent headache activity"—three reported migraines between August 2020 and August 2021—demonstrated improvement from her prior report in January 2020 of five headaches in the prior three months and did not warrant additional limitations due to migraine headaches. (*Id.* at 24.) Furthermore, the ALJ noted that both of the state agency psychological consultants, Deborah Pape, Ph.D., and Russell Phillips, Ph.D., opined that "the pain and fatigue related to the claimant's physical impairments will result in mental deficits related to the claimant's ability to maintain concentration, persistence, and pace and adapt to workplace changes" and that both state agency medical consultants, Mina Khorshidi, M.D. and Marcia Lipski, M.D., opined limitations to workplace hazards and exposure to irritants. (*Id.* at 24–25.) The ALJ accordingly included limitations for "occasional exposure to hazards such as unprotected heights and dangerous moving machinery," "access to regularly scheduled breaks due to the effects of pain and fatigue," and the inability to perform "fast paced production rate pace-work." (*Id.*) None of the state agency consultants opined a limitation related to light sensitivity. (*Id.*)

"Even if reasonable minds could differ as to the effect of Claimant's headaches on her ability to work full time, the Court must defer to the ALJ's judgment and weighing of the evidence under these circumstances." *Anna H. v. Kijakazi*, No. 20 CV 7137, 2022 U.S. Dist. LEXIS 178804, at *18 (N.D. Ill. Sep. 30, 2022). Thus, I find that the ALJ did create a logical bridge from the record evidence to his conclusions and that his decision not to include light sensitivity and additional rest break limitations in the RFC was supported by substantial evidence. Remand is not warranted on this ground.

### 2. RFC Limitations for Hand Dysfunction

Next, Johnson asserts that the ALJ erred because he "never explained why the record warranted more greatly limiting Ms. Johnson's standing and walking capacity (as evidenced by the reduction from light to sedentary work) but did not warrant greater manipulative limitations than those proposed by the State agency doctors, whose opinions the ALJ did not find persuasive overall." (Pl. Br. at 17.) In particular, the ALJ "did not set forth a logical explanation of the effects of Ms. Johnson's hand swelling and pain on her ability to work" or for "the conclusion that Ms. Johnson could sustain 5.33 hours of handling and fingering each day" rather than the proposed limitation to "occasional handling and fingering." (*Id.* at 19.)[2]

The ALJ discussed the opinions of both state agency medical consultants in his analysis. Dr. Mina Khorshidi opined that Johnson "was limited to light work but with only occasional climbing of ladders, ropes, or scaffolds with only frequent handling and fingering but with no concentrated exposure to fumes, odors, dusts, gases, or poor ventilation." (Tr. 24.) Dr. Marcia Lipski opined "similar exertional limitations" and also "found the claimant limited to only frequent handling and fingering." (*Id.*) Ultimately, the ALJ found "neither opinion persuasive overall" and limited Johnson to "sedentary work" due to Johnson's "musculoskeletal impairments and her myalgia pain and related fatigue" and "frequent bilateral handling and fingering and occasional exposure to extreme cold" due to "pain and dysfunction in her hands." (*Id.* at 25.)

While Johnson's hearing testimony and statements to examining providers demonstrate the symptoms and difficulty she has experienced with her hands, "an ALJ need

---

[2] "Occasionally" means occurring from very little up to one-third of the time, i.e. no more than about 2 hours of an 8-hour workday, while "frequently" means occurring one-third to two-thirds of the time, i.e. 2.7 to 5.3 hours of an 8-hour workday. SSR 96-6; SSR 83-10.

7

only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). And even if the Johnson's testimony had enabled the ALJ to impose more restrictive manipulative limitations, "there is nothing that compels them." *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021). Despite Johnson's assertion, the ALJ considered Johnson's hand pain and dysfunction when crafting the RFC. The ALJ found that although Johnson reported pain and swelling in her hands, physicians noted across multiple visits that there was no tenderness in the flexor tendons on the hands; no tenderness with movement of the wrist; no evidence of edema, tenderness, or deformities throughout her extremities; generally good grip strength; and normal range of motion. (Tr. 21–22.) Moreover, both Dr. Khorshidi's and Dr. Lipski's opinions support the ALJ's finding that Johnson can perform sedentary work with a limitation of frequent handling and fingering. (*Id.* at 24–25.) Because the ALJ's limitation to frequent handling and fingering is supported by substantial evidence, remand is not warranted on this ground.

    3.    *SSR 16-3p Symptom Evaluation*

Finally, Johnson asserts that the ALJ erred by improperly relying on her daily activities to undercut her allegations of disabling limitations and not addressing any qualifications on those activities. (Pl. Br. at 20–21.) Johnson also asserts that the ALJ failed to address testimony and a function report from her mother. (*Id.* at 22.)

"In evaluating a claimant's subjective symptom allegations, an ALJ assesses the objective medical evidence and several other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate pain." *Angie S. v. Kijakazi*, No. 21 C 5978, 2022 U.S. Dist. LEXIS 210429, at *22 (N.D. Ill. Nov. 21, 2022) (citing SSR 116-3p).

"Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). On that basis, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.*; *see also Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). Furthermore, any "assessment of a claimant's daily activities should take into account how her activities may vary between her good days and her bad days." *Gould v. Kijakazi*, No. 21-CV-308, 2022 U.S. Dist. LEXIS 31435, at *7–8 (E.D. Wis. Feb. 23, 2022). However, "[s]o long as an ALJ gives specific reasons supported by the record, [the court] will not overturn his credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

I agree that the ALJ's analysis is lacking. The ALJ noted that Johnson "reported part-time work baking cakes and the ability to engage in home exercise despite complaints of '8/10' pain in early 2021 that sometimes required use of a cane" and that "[r]ecords in late 2021 continue to note the ability to engage in part-time work baking and yoga despite symptoms consistent with progression of her autoimmune disorder." (Tr. 23–24.) At no point did the ALJ discuss which of Johnson's symptoms "interfered with [her] ability to perform daily activities" or "address the limited manner in which she performed them." *Clark v. Saul*, 421 F. Supp. 3d 628, 633 (N.D. Ind. 2019).

But the ALJ's consideration of Johnson's activities as inconsistent with the extent of her symptoms and limitations was only a small part of the subjective symptom analysis. In fact, the ALJ discounted Johnson's statements of disabling symptoms for several reasons, including record evidence showing a normal range of motion despite claims of arthritis and myalgia pain, normal gait and balance despite claims of constant cane use, full grip strength and range of motion despite testimony of significant problems using her hands, mild hearing loss with 100% speech discrimination despite claims of sensorineural hearing loss, and well-managed Crohn's disease and migraines with treatment despite claims of disabling symptoms. (Tr. 23–24.) Thus, the ALJ's assessment of Johnson's subjective symptoms was not patently wrong and provides no basis for remand.

I also find that the ALJ's omission of Johnson's mother's function report from his decision does not constitute impermissible cherry-picking. As stated, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion,'" which the ALJ did here. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting (*Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). Johnson's mother's report and testimony were largely duplicative of other record evidence already reviewed by the ALJ, including Johnson's record and testimony, and therefore redundant. *Bruce P. v. Saul*, No. 18 CV 7478, 2020 WL 7042888, at *8 (N.D. Ill. Dec. 1, 2020) (finding that the ALJ's failure to mention the claimant's cousin's testimony, which was duplicative of other evidence in the record, was harmless). Furthermore, Johnson's mother's testimony is just one instance of supporting evidence against the numerous instances in the record that support the ALJ's decision to discount

Johnson's subjective symptom allegations. Thus, the ALJ did not err, and remand is not required.

## CONCLUSION

Johnson asserts three grounds for remand. First, Johnson asserts that the ALJ failed to adequately account for limitations related to her migraines in the RFC. However, I find that the ALJ's decision not to include limitations for light sensitivity or need for additional rest breaks was supported by substantial evidence.

Johnson next asserts that the ALJ erred because he failed to explain why the record did not warrant greater manipulative limitations than those proposed by the State agency doctors. But, despite Johnson's assertion, the ALJ adequately considered Johnson's hand pain and dysfunction when crafting the RFC, and both Dr. Khorshidi's and Dr. Lipski's opinions support the ALJ's finding that Johnson should be limited to frequent handling and fingering rather than occasional.

Finally, Johnson asserts that the ALJ erred by improperly relying on her daily activities to undercut her allegations of disabling limitations and not addressing any qualifications on those activities and by failing to address testimony and a function report from her mother. I find that the ALJ's assessment of Johnson's subjective allegations was not patently wrong and that any error in omitting Johnson's mother's testimony was harmless.

Because none of Johnson's asserted grounds provides a basis for remand, the Commissioner's decision is affirmed, and the case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this this 9th day of January, 2024.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge